IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DR. ERNESTO A. LEE | CIVIL ACTION |
|---|---|
| v. | NO. 19-835 |
| UNIVERSITY OF PENNSYLVANIA, SCHOOL OF DENTAL MEDICINE, DR. DANA GRAVES, and DR. MARK WOLFF | |

**MEMORANDUM RE: MOTION TO DISMISS**

Baylson, J.                                                                                                      August 27, 2019

## I. Introduction

This case involves alleged violations of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and state law that occurred during Plaintiff Dr. Ernesto A. Lee's employment with Defendant University of Pennsylvania, School of Dental Medicine ("Penn Dental School"). Plaintiff asserts claims against Defendant Penn Dental School and individual Defendants Dr. Dana Graves and Dr. Mark Wolff. Plaintiff's Complaint (ECF 1, "Compl." or "Complaint") advances four Counts, each brought against all Defendants collectively:

1. **Count I**: Violation of the Americans with Disabilities Act, 42 U.S.C. § 1201, et seq. ("ADA");

2. **Count II**: Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII");

3. **Count III**: Violation of the Pennsylvania Human Relations Act, 43 P.S. § 954, et seq. ("PHRA"); and

4. **Count IV**: Defamation (slander and libel) under 42 P.S. § 8343 and the Restatement (Second) of Torts § 573.

Defendants now move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to provide a short and plain statement of the facts supporting Plaintiff's claims

1

as required by Rule 8(a). For the reasons stated below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## II. Factual Background

Taking Plaintiff's allegations as true, the factual background is as follows. Plaintiff is a naturalized U.S. citizen who emigrated from Panama and is of Asian ethnic descent. (Compl. ¶ 3.) Plaintiff was employed by Defendant Penn Dental School in a part-time, two days-per-week clinical position beginning in 2004, and in 2007, he was appointed Director of the Periodontal Prosthesis program. (Id. ¶¶ 22-23.) During this time period, Plaintiff was diagnosed with a chronic terminal illness requiring chemotherapy treatments for the remainder of his life. (Id. ¶¶ 4, 24.) Plaintiff previously paid for an individually-funded health insurance plan, which he alleges was cancelled because of his medical condition. (Id. ¶ 25.)

In or around 2009, former Penn Dental School Dean Kinane converted Plaintiff's employment status to "full-time" to enable Plaintiff to qualify for employer-subsidized health insurance benefits. (Id. ¶ 26.) As an accommodation for the side effects of chemotherapy, Plaintiff was not required to attend on-campus or in-office hours in the mornings. (Id. ¶ 27.) Plaintiff's employee benefits eligibility and scheduling accommodation were never formalized in a written job description. (Id. ¶ 30.) After his designation as a full-time employee, Plaintiff alleges he was assigned additional responsibilities, including roles as Director of the Post-Doctoral Implantology Fellowship and Clinical Director of Post-Doctoral Periodontics, without any pay increases or raises. (Id.) Other non-disabled Program Director level clinicians and administrators, however, were provided pay raises commensurate with increased administrative and clinical responsibilities. (Id. ¶ 31.)

Plaintiff alleges that funding that should have been earmarked as compensation for Plaintiff's increased responsibilities was instead paid to a non-disabled, non-Hispanic female employee specially favored by former Dean Kinane, who was hired as Assistant Dean. (Id. ¶¶ 34, 40.) Plaintiff also alleges that he and others were victims of discrimination and harassment because of former Dean Kinane's sexual favoritism. (Id. ¶ 43.) Dean Kinane allegedly departed from Penn Dental School in connection with allegations of sexual favoritism and harassment. (Id. ¶ 37.)

Sometime after Dean Kinane's departure, Plaintiff was accused of gender harassment, dishonesty, improper relationships with students, and theft of patients from Penn Dental Medicine. (Id. ¶¶ 39, 44-45.) Plaintiff alleges that he was targeted for false claims of gender harassment because Defendants calculated that Plaintiff's "machismo" cultural heritage would make such false claims believable. (Id. ¶ 41.) Defendant Interim Dean Graves told Plaintiff that he had to work on what Graves perceived to be a "cultural problem" when interacting with colleagues and students. (Id. ¶ 42.) Defendant Graves also told Plaintiff that his accommodation of limiting his morning hours because of the effects of daily chemotherapy treatments was good for Plaintiff because of his "Spanish culture," laughing while saying, "you know, mañana, mañana." (Id. ¶ 46.)

On or about September 2017, Plaintiff was demoted from his position as Director of the Periodontal Prosthesis program and restricted to clinical work under appointment to the Penn Dental Faculty Practice because of the unsupported accusations of harassment, misconduct, dishonesty, and theft. (Id. ¶¶ 44-45.) Plaintiff was not informed of the allegations against him at the time of his demotion, as required by Defendant Penn Dental School's policies and practices, but instead was privately informed by Defendant Graves, who was then employed as Vice Dean of Research of Penn Dental School. (Id. ¶¶ 45-47.) Defendant Graves also told Plaintiff that the

3

claims had been "investigated" and "found to be without basis," and that "a report to that effect was sent to the Provost." (Id. ¶ 47.)

Plaintiff then requested that Defendant Graves restore the administrative responsibilities Plaintiff had performed as Director of the Periodontal Prosthesis program, which were removed when he was demoted in connection with the false allegations. (Id. ¶¶ 44, 48.) Plaintiff also requested that he be provided with a written job description formalizing his disability accommodations and full-time employment arrangement. (Id. ¶ 48.) Plaintiff alleges that as a result of his complaints about discrimination and sexual favoritism by the prior Dean, Dean Kinane, his requests were denied by Defendant Graves and his Interim Chairman, Uri Hangorky. (Id. ¶ 49.) Instead of granting Plaintiff's request, Defendant Graves "began a campaign" to remove Plaintiff's scheduling accommodation. (Id. ¶ 50.) Defendant Graves also tried to restrict Plaintiff's ability to maintain his private practice, knowing that Plaintiff could not afford to remain employed if he were placed into a position that deprived him of employer-sponsored and subsidized health care benefits. (Id.)

When Plaintiff complained that the scheduling accommodation was reasonable and necessary in light of his lifetime chemotherapy treatments, Defendants began to suggest that Plaintiff's position did not merit his full-time classification and threatened that reclassification to part-time employment could result in loss of his employer-subsidized health care benefits. (Id. ¶ 51.) Specifically, Defendants Graves and Wolff, Defendant Penn Dental School's new top administrators, determined that because Plaintiff's condition made him dependent upon the University's health care, reclassification of Plaintiff's position would drive Plaintiff out of his job, as Plaintiff's salary, by itself, was not sufficient for Plaintiff to afford necessary medical care. (Id. ¶ 52.) Defendant Graves also "threatened" Plaintiff that if his full-time status were "improperly

4

classified," upon reclassification as a part-employee, Defendants could "force" Plaintiff to "re-pay" Defendants for the cost of Plaintiff's past health care benefits. (Id. ¶ 54.)

In or around June 2018, Plaintiff submitted claims of disability and national origin discrimination to the Equal Employment Opportunity Commission and to Defendant Penn Dental School's Office of Affirmative Action and Equal Opportunity for investigation. (Id. ¶ 56.) Plaintiff's internal complaint was not adequately investigated or addressed by Defendants. (Id. ¶ 57.) Rather, Plaintiff alleges that as a result of these filings, he was subject to retaliatory harassment in the form of increasing threats by Defendants Graves and Wolff to reclassify Plaintiff's job as part-time, non-benefit eligible and of defaming Plaintiff by repeating allegations of sexual harassment, dishonesty, and theft. (Id.) Plaintiff alleges that despite acknowledging the falsity of these allegations and Defendant Penn Dental School's confidentiality policy regarding internal complaints and allegations, Defendants Graves and Wolff repeated and permitted others to repeat the false claims within the ranks of dental professionals in Pennsylvania, New York, and abroad. (Id. ¶¶ 58-59.)

Sometime after June 2018, Defendant Wolff upheld Defendant Graves's decision to limit Plaintiff's job to two eight-hour shifts per week at a University-affiliated clinical practice without any administrative responsibilities and informed Plaintiff that his long-standing private dental practice was a "conflict of commitment" to the University's clinical practice. (Id. ¶¶ 62-64.) Plaintiff alleges that Defendant Wolff refused to consider any accommodation to Plaintiff's schedule that would otherwise have permitted him to gain the 1.5 additional hours per week needed for Plaintiff to maintain eligibility for employer-sponsored and subsidized health care benefits, even if classified as working less than full-time. (Id. ¶ 64.) Plaintiff alleges that Defendants' decisions to reclassify him as part-time, non-benefit-eligible and to deny him permission to

5

maintain his private practice made it economically impossible for Plaintiff to continue to work at Penn Dental School. (Id. ¶ 68.)

## III. Procedural History

Plaintiff filed the Complaint in this case on February 26, 2019 (ECF 1). On May 9, 2019, Defendants filed the instant Motion to Dismiss all Counts of the Complaint under Rule 12(b)(6) (ECF 5, "Mot."). Plaintiff filed a Response in Opposition to the Motion to Dismiss on May 23, 2019 (ECF 6, "Resp."). Defendants filed a Reply in support of the Motion on May 30, 2019 (ECF 7, "Rep.").

## IV. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Iqbal, 556 U.S. at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (citing Twombly, 550 U.S. at 556 n.3) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the

claim rests."). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

V.     Discussion

   A. ADA and Title VII Claims Against Defendants Graves and Wolff (Counts I and II)

Defendants argue that it is unclear from Plaintiff's Complaint whether he is attempting to bring one or more ADA and Title VII claims against Graves and Wolff, the individual Defendants. (Mot. at 7.) As Plaintiff recognizes, these claims are not legally viable because individuals cannot be held liable for damages in employment cases under the ADA or Title VII. See Koslow v. Commonwealth, 302 F.3d 161, 178 (3d Cir. 2002) ("There appears to be no individual liability for damages under Title I of the ADA"); Datto v. Harrison, 664 F. Supp. 2d 472, 488 (E.D. Pa. 2009) (McLaughlin, J.) (relying on Title VII precedent to limit individual liability for ADA retaliation claims to public entities or accommodations); McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 398 (E.D. Pa. 2002) (Rufe, J.) (dismissing ADA discrimination and retaliation claims against individual defendants with prejudice). Plaintiff concedes that it has generally been established that there is no individual liability under Title VII in the Third Circuit. (See Resp. at 4) (citing Emerson v. Theill Coll., 296 F.3d 184, 190 (3d Cir. 2002)).) Plaintiff further concedes that while the Third Circuit has not spoken directly on the topic of individual liability under Titles I or II of the ADA, the weight of judges' decisions both within and outside of this District extends this result to claims under the ADA as well. (See Resp. at 4) (citing DeSantis v. N.J. Transit, 103 F. Supp. 3d 583, 589 (D.N.J. 2013)).)

In light of the foregoing, it is undisputed that Plaintiff cannot maintain a cause of action under the ADA or Title VII against Defendants Graves or Wolff. Counts I and II are thus

dismissed, with prejudice, as to Graves and Wolff. The Court dismisses with prejudice because any amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 109 (3d Cir. 2002) (noting that a court may dismiss a claim with prejudice if amendment would be inequitable or futile).

### B. ADA Claim Against Defendant Penn Dental School (Count I)

Defendants also move to dismiss Plaintiff's first cause of action against Penn Dental School because Plaintiff's Complaint lacks factual allegations necessary to show that he is disabled. (See Mot. at 8-10; Rep. at 2-4.) In order to establish a prima facie claim of disability discrimination under the ADA, Plaintiff must allege sufficient facts demonstrating that he: (1) is disabled within the meaning of the ADA; (2) is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) was subjected to an adverse employment action because of his disability. Amiot v. Kemper Ins. Co., 122 F. App'x 577, 580 (3d Cir. 2004); Feliciano v. Coca-Cola Refreshments USA, Inc., 281 F. Supp. 3d 585, 592 (E.D. Pa. 2017) (Rufe, J.); Barley v. Fox Chase Cancer Ctr., 46 F. Supp. 3d 565, 573 (E.D. Pa. 2014) (Dalzell, J.).

To adequately plead the first element of the prima facie case, Plaintiff must identify the medical condition or illness from which he claims to suffer to enable the Court and Defendants to assess whether he qualifies as disabled under the ADA. See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306-07 (3d Cir. 1999). Under the ADA, "disability means 'a physical . . . impairment that substantially limits one or more major life activities.'" Szarawara v. Cty. of Montgomery, No. 12-5714, 2013 WL 3230691, at *3 (E.D. Pa. June 27, 2013) (Baylson, J.) (quoting 42 U.S.C. § 12102(1)(A)). Courts must "determine the existence of disabilities on a case-by-case basis." Taylor, 184 F.3d at 306 (citation omitted). To make this "individualized assessment," a court

"must begin by identifying the specific life activity or life activities that [the plaintiff] says h[is] disorder affected and then evaluate whether h[is] condition 'substantially limits' those life activities." Id. at 306-07. In sum, Plaintiff is required to explain which of his major life activities are impacted by his alleged terminal illness, and how. Cf. Jeannot v. Phila. Hous. Auth., No. 18-1977, 2018 WL 4739669, at *3-4 (E.D. Pa. Oct. 2, 2018) (Kelly, J.) (dismissing an ADA claim because the plaintiff failed to allege his diagnosis or any limitation on a major life activity).

Here, Plaintiff alleges that he suffers from a "terminal illness" that requires daily morning administration of chemotherapy. (Compl. ¶¶ 4, 24, 46, 51, 69, 70.) Plaintiff's Complaint fails to show that he is disabled within the meaning of the ADA because he does not include any factual allegations describing how his alleged disability impacts his daily life or otherwise substantially limits a major life activity. See Feliciano, 281 F. Supp. 3d at 592 (dismissing the plaintiff's ADA claim where the plaintiff did not identify her impairment or provide a "short and plain statement of the impact the impairment ha[d] on at least one major life activity") (citation omitted); Lee v. Se. Pa. Transp. Auth., 418 F. Supp. 2d 675 (E.D. Pa. 2005) (McLaughlin, J.) (concluding that the plaintiff's allegations were insufficient to support an ADA claim because the plaintiff "d[id] not explain what her disability [was]"); Creasy v. Novelty, Inc., No. CIV.A. 404CV2296, 2005 WL 1652441, at *2 (M.D. Pa. July 6, 2005) (dismissing an ADA claim where the plaintiff did not allege what major life activity was substantially limited by his physical impairment).

Accordingly, the Court concludes that Plaintiff has not alleged sufficient facts regarding the nature and impact of his illness, as required to establish a disability and maintain a cause of action under the ADA. Therefore, as to Defendant Penn Dental School, Count I is dismissed, without prejudice, and with leave to amend.

### C. Title VII Claim Against Defendant Penn Dental School (Count II)

Defendants further argue that Plaintiff's second cause of action as to Penn Dental School must be dismissed because the Complaint fails to plausibly allege that Plaintiff experienced national origin discrimination. (See Mot. at 11-16; Rep. at 6-7.) In Title VII cases, both the Supreme Court and the Third Circuit have held that a plaintiff does not need to prove each element of a prima facie case of discrimination to state a plausible claim for relief. For example, in Swierkiewicz v. Sorema N.A., the Supreme Court noted:

> Federal Rule of Civil Procedure 8(a)(2) [ ] provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief.". . . Such a statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

534 U.S. 506, 511-12 (2002) (citations omitted). Although this decision pre-dated Twombly and Iqbal, the Third Circuit has continued to follow its guidance in Title VII cases thereafter. Accordingly, a "plausible" Title VII claim may be alleged without establishing a full prima facie case of discrimination. See Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009) ("Even post-Twombly, it has been noted that a plaintiff is not required to establish the elements of a prima facie case but instead, need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'") (citation omitted); see also Williams v. Temple Univ. Hosp., 400 F. App'x 650, 653 (3d Cir. 2010) (noting that the standard to survive a Rule 12(b)(6) motion "is not an extraordinarily high one").

Viewing the facts alleged in the light most favorable to Plaintiff, as the Court must at this stage, the Court concludes that the Complaint contains sufficient factual allegations to meet the

pleading standards set forth above. As such, Defendants' Motion to Dismiss Count II against Defendant Penn Dental School is denied.

### D. PHRA Claims Against All Defendants (Count III)

Plaintiff also alleges that Defendants discriminated against him on the basis of his national origin and disability in violation of the PHRA. "The analytical framework used to evaluate a disability discrimination claim under the PHRA is effectively indistinguishable from that under the ADA, thus allowing courts to dispose of both ADA and PHRA claims on the same grounds." Bialko v. Quaker Oats Co., 434 F. App'x 139, 142 n.5 (3d Cir. 2011) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 357, 382 (3d Cir. 2002)); see also Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 274 (3d Cir. 2009) (noting that the ADA and PHRA are "to be interpreted consistently" and "have the same standard for determination of liability"). Similarly, the showing required to plead national origin discrimination under Title VII and the PHRA is the same. See Tarr v. FedEx Ground, 398 F. App'x 815, 818 n.1 (3d Cir. 2010) (noting that "the criteria for evaluating claims under Title VII and the PHRA are identical"); Wood v. Univ. of Pittsburgh, 395 F. App'x 810, 814 n.1 (3d Cir. 2010) (stating that the analysis of discrimination claims under the PHRA is "identical" to the analysis under Title VII).

However, unlike the ADA and Title VII, supervisory employees may be liable in their individual capacities under § 955(e) of the PHRA if they are shown to have "aided and abetted" the employer's discrimination under the PHRA. See Dici v. Commonwealth, 91 F.3d 542, 552-53 (3d Cir. 1996) (dismissing Title VII claims against a supervisory employee but declining to dismiss the plaintiff's PHRA aiding and abetting claim against the employee); see also Cohen v. Temple Physicians, Inc., 11 F. Supp. 2d 733, 737 (E.D. Pa. 1998) (Joyner, J.) ("Title VII, the ADA, . . . and PHRA are all to be interpreted consistently with one another such that individual employees

11

are not to be held liable under these Acts unless a supervisory employee can be shown to have aided and abetted the employer's discriminatory actions in violation of the PHRA.").

For the same reasons discussed above, as to Defendant Penn Dental School, the Complaint fails to state a valid disability discrimination claim but alleges sufficient facts to support a national origin discrimination claim. With respect to Defendants Graves and Wolff, the Complaint alleges that they "aided and abetted the discrimination, hostile work environment and harassment and retaliation" to which Plaintiff was subjected. (Compl. ¶¶ 18-19.) As the Court has concluded that the Complaint fails to state a valid PHRA claim based on disability discrimination against Defendant Penn Dental School, Plaintiff cannot sustain a claim that Graves and Wolff aided and abetted such discrimination in violation of the PHRA. See Kaniuka v. Good Shepherd Home, No. 05-CV-02917, 2006 WL 2380387, at *10 (E.D. Pa. Aug. 15, 2006) (Stengel, J.) ("Individual defendants cannot violate PHRA section 955(e) when there is no corresponding section 955(a) violation by an employer to aid and abet."). Moreover, the Court concludes that Plaintiff's allegations of aiding and abetting national origin discrimination are conclusory and, therefore, are not sufficient to withstand dismissal.

In sum, as to Defendant Penn Dental School, the Motion to Dismiss Count III is granted, without prejudice, with regard to disability discrimination and denied with respect to alleged national origin discrimination. Count III is dismissed, without prejudice, as to Defendants Graves and Wolff.

### E. Defamation Claims: Slander and Libel Against All Defendants (Count IV)

Finally, Defendants argue that Plaintiff's Complaint does not plead defamation with the requisite amount of specificity. (See Mot. at 28-30.) The Court agrees.

The pleading standard governing Plaintiff's defamation claim in this Court is set out in

Federal Rule of Civil Procedure 8(a). Under this rule, "a defamation plaintiff does not have to plead the precise defamatory statements, nor must she specifically name the person who made the statements." Tuman v. Genesis Assocs., 935 F. Supp. 1375, 1391 (E.D. Pa. 1996) (Padova, J.) (quoting Lynch v. Borough of Ambler, No. 94-6401, 1995 WL 113290, at *5-6 (E.D. Pa. Mar. 15, 1995) (Kelly, J.)).

However, even considering the facts in the light most favorable to Plaintiff, as the Court must at the pleading stage, Plaintiff has not alleged sufficient facts to state a defamation claim based on slander. Plaintiff alleges that Defendants falsely stated that Plaintiff was guilty of sexual harassment, dishonesty, and theft to dental professionals in Pennsylvania, New York, and abroad, even though Defendants knew that these accusations were false. (See Compl. ¶¶ 57-59.) These allegations are conclusory. To survive dismissal, Plaintiff must allege at least some specific statements identifying the speaker, the approximate date, the content, and the audience.

Further, as Plaintiff has not adequately alleged that false statements were put in writing, Plaintiff has failed to state a valid libel claim. See Sobel v. Wingard, 531 A.2d 520, 522 (Pa. 1987) ("Libel is maliciously written or printed material which tends to blacken a person's reputation or to expose the person to public hatred, contempt, or ridicule or injure the person in his or her business or profession.") (citation omitted). Plaintiff argues that he "believes [the false complaints] all exist in writing–and that certainly the underlying false statements are reiterated in the Provost's Report." (Resp. at 36.) However, the Complaint only alleges that a report sent to the provost explained that the claims were "without basis" after an investigation. (See Compl. ¶ 47.) An allegation that a writing stated that false allegations were indeed false is not sufficient to withstand dismissal. Therefore, Defendants' Motion to Dismiss is granted, without prejudice, as to Plaintiff's defamation claim.

## VI.     Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss is granted, with prejudice, as to Plaintiff's ADA and Title VII claims against Defendants Graves and Wolff in Counts I and II; granted, without prejudice, as to Plaintiff's PHRA claims against Defendants Graves and Wolff in Count III; granted, without prejudice, as to Plaintiff's ADA and PHRA disability discrimination claims against Defendant Penn Dental School in Counts I and III; granted, without prejudice, as to Plaintiff's defamation claim in Count IV; and denied as to Plaintiff's Title VII and PHRA national origin discrimination claims against Defendant Penn Dental School in Counts II and III.

An appropriate Order follows.

O:\CIVIL 19\19-835 Lee v Univ of Penn Dental\19cv835 Memo re Mot to Dismiss.docx